IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Camden Vicinage)

VALERIE ARMSTEAD, M.D.,  :  **CIVIL ACTION NO.:**
          :
    ***Plaintiff,***   :
          :
   vs.      :
          :
THE COOPER HEALTH SYSTEM, :  **JURY TRIAL DEMANDED**
          :
    ***Defendant.***  :

## COMPLAINT AND JURY DEMAND

**I.**  **PRELIMINARY STATEMENT:**

  1.  This is an action for an award of damages, declaratory and injunctive relief, attorney's fees and other relief on behalf of Plaintiff, Valerie Armstead M.D. ("Plaintiff Armstead"), a former employee of Defendant, The Cooper Health System ("Defendant"), who has been harmed by the Defendant's discriminatory employment practices.

  2.  This action is brought under Title VII of the Human Rights Act of 1964, 42 U.S.C. §2000(e) et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Civil Rights Act of 1871, 42 U.S.C. §1981 ("§1981"), and the New Jersey Law Against Discrimination N.J. Stat. §10:5-1 et seq. ("NJLAD").

**II.**  **JURISDICTION AND VENUE:**

  3.  The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff Armstead's claims are substantively based on Title VII and §1981.

4.     The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, to consider Plaintiff Armstead's claims arising under the NJLAD.

5.     All conditions precedent to the institution of this suit have been fulfilled. On September 1, 2017, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission ("EEOC") and this action has been filed within ninety (90) days of receipt of said notice.

6.     Plaintiff Armstead has satisfied all other jurisdictional prerequisites to the maintenance of this action.

## III.   PARTIES:

7.     Plaintiff, Valerie Armstead, M.D. ("Plaintiff Armstead"), is a sixty three (63) year old African-American female citizen of the State of New Jersey, residing therein at 725 Kings Highway, Moorestown, New Jersey 08057.

8.     Defendant, The Cooper Health System ("Defendant"), is a non-profit corporation duly organized and existing under the laws of the State of New Jersey, maintaining a place of business located at 1 Cooper Plaza, Camden, New Jersey 08103.

9.     At all times relevant hereto, the Defendant was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

10.     At all times material herein, the Defendant has been a "person" and "employer" as defined under Title VII, §1981, and the NJLAD and has been, and is, subject to the provisions of each said Act.

## IV.   **STATEMENT OF FACTS:**

11.    Plaintiff Armstead, an African-American female, is a highly-accomplished Anesthesiologist with subspecialty certification in Pediatric Anesthesiology.

12.    By way of background, following her graduation from Washington University at St. Louis School of Medicine in 1981,  Plaintiff Armstead completed her Internship at McGaw Medical Center of Northwestern University.  Thereafter, she completed an Anesthesiology Residency at Barnes & Affiliated Hospitals at Washington University School of Medicine in 1986.  Subsequently, in 1987, Plaintiff Armstead completed a fellowship in Pediatric Anesthesiology & Critical Care Medicine.  From January through June of 2010, Plaintiff Armstead served as a Fellow in Pediatric Cardiothoracic Anesthesiology at Baylor College of Medicine/Texas Children's Hospital.

13.    Plaintiff Armstead has assembled an outstanding track record in academia, having held various faculty appointments, serving as Thomas Jefferson University's Director of Anesthesiology for the Program for Translational Research, and as its Director of the Anesthesiology Life Sciences Research Laboratory.

14.    Additionally, Plaintiff Armstead has authored or co-authored numerous scholarly articles, lectured both nationwide and internationally, and served as an organizer or workshop faculty at a number of prominent professional events.

15.    On or about January 5, 2012, the Defendant hired Plaintiff Armstead as a Staff Anesthesiologist and Professor of Anesthesiology.  At all times relevant hereto, Plaintiff Armstead maintained a satisfactory job performance rating in said capacity.

16. Significantly, at all times relevant hereto, Plaintiff Armstead was the only African-American female Pediatric and Cardiac Anesthesiologist employed by Defendant.

17. Shortly after her hire, the Defendant, through its agents, servants and employees, embarked upon a campaign of discrimination against Plaintiff Armstead on the basis of her race (African-American) and sex (female).

18. By way of example, in or about June of 2012, Plaintiff Armstead learned that Joe Lombardi, M.D. ("Dr. Lombardi"), Vascular Surgeon, precluded her from working on cardiac and/or vascular anesthesia cases without any justification. Upon information and belief, Dr. Lombardi sought to exclude Plaintiff Armstead based upon her race and sex.

19. Furthermore, without any legitimate reason whatsoever, Jeffrey Carpenter, M.D. ("Dr. Carpenter"), Chief of Surgery, attempted to solicit letters from the staff complaining about Plaintiff Armstead in order to bar her from performing cardiac and/or vascular anesthesia cases. Dr. Carpenter did not request letters of complaint regarding any other Anesthesiologists and Plaintiff Armstead was the only African-American and the only female performing such cases.

20. To further interfere with Plaintiff Armstead's ability to perform cardiac and/or vascular cases, Defendant required Plaintiff Armstead to pass a certification exam in order to continue to work on these cases. However, male and/or non-African-American Anesthesiologists, including Michael Misbin, M.D. ("Dr. Misbin") and Dirin Soni, M.D. ("Dr. Soni"), did not have the same limitations placed on them. Regardless of

the legitimacy of the request, Plaintiff Armstead passed both the basic and advanced

certification exams.  Moreover, Dr. Misbin only passed the basic examination, while Dr.

Soni failed both examinations.  Notwithstanding the same, the Defendant allowed Dr.

Misbin and Dr. Soni to continue working on cardiac cases.

21.     Accordingly, in or about the Summer of 2012, Plaintiff Armstead sent an

email to Douglas Allen ("Allen"), Vice President of Human Resources, to register a

formal complaint of race and sex discrimination.  In response thereto, Allen sent an email

to Plaintiff Armstead stating that he needed to discuss the circumstances with Dr.

Carpenter before he would commence an investigation.  Notwithstanding said complaint,

the Defendant failed to conduct an investigation and likewise failed to take steps to cause

the discriminatory treatment to cease.

22.     In or about December of 2014, despite passing both of the aforesaid

certification exams, Defendant abruptly removed Plaintiff Armstead from the

Cardiothoracic Anesthesia team based on her race and sex. Anthony Mazzarelli, M.D.

("Dr. Mazzarelli"), (former) Chief Medical Officer, approached Plaintiff Armstead and

informed her that she had been removed from the cardiothoracic anesthesia team because

she was "not a good fit."

23.     In or about May of 2015, Plaintiff Armstead was one of two internal

candidates who interviewed for the position of Chair of the Anesthesiology Department.

However, despite her extensive credentials, the Defendant hired a non-African-American

male, Alann Solina ("Solina"), who was significantly less experienced and less qualified.

Notably, all members of the search committee who interviewed said candidates are

Caucasian and only one (1) woman sat on said committee.  Significantly, Francis Spitz ("Spitz"), a member of the search committee, had previously been investigated by Defendant's Human Resources Department for making racially derogatory statements about African-American individuals.

24.    Despite Plaintiff Armstead's extensive credentials, the Defendant hired Alann Solina, M.D. ("Dr. Solina"), a significantly less qualified, less experienced, non-African-American male for the position of Chair of Anesthesiology.  Upon information and belief, at his previous place of employment, Dr. Solina made multiple racially motivated attacks against her immediate supervisor, an African-American female, and was disciplined and demoted as a result of said abhorrent conduct.  At that time, Dr. Carpenter was Dr. Solina's direct supervisor.

25.    Once Dr. Solina became Chair of the Anesthesiology Department, he continued the Defendant's campaign of discrimination against Plaintiff Armstead.  By way of example, in or about September of 2015, Dr. Solina unnecessarily antagonized Plaintiff Armstead regarding requests for more information prior to billing for services.

26.    As further discrimination, in or about March of 2016, Dr. Solina wrongfully accused Plaintiff Armstead of lacking professionalism.  Said accusation was unwarranted and untrue.  In fact, Plaintiff Armstead did not lack professionalism and had an excellent reputation.  As evidence thereof, Plaintiff Armstead was elected by Defendant's faculty to the Committee for Appointments and Promotions in or about this same time period.

27.    Further evidencing the Defendant's discriminatory animus, in or about June of 2016, Dr. Solina removed Plaintiff Armstead as Co-Director of the pediatric

anesthesiologist team.  Dr. Solina failed to provide any explanation for the removal.

Notably, Plaintiff Armstead had thirty-one (31) years of experience in Pediatric

Anesthesiology and was the most qualified and experienced member of the team.  Prior

to Plaintiff Armstead's removal, Erin Pukenas, M.D. ("Dr. Pukenas"), Assistant Professor

of Anesthesiology and Chief Safety Officer, verbally attacked Plaintiff Armstead and

expressed anger and disapproval regarding Plaintiff Armstead's appointment as Co-

Director of the pediatric anesthesiology team.  Previously, Dr. Pukenas publically

exhibited similar discriminatory behavior toward the Indian-American Co-Director of the

pediatric anesthesiology team.  Upon information and belief, Dr. Solina sought to exclude

Plaintiff Armstead based upon her race and sex.

28.     Shortly thereafter, on or about June 27, 2016, Plaintiff Armstead was asked

to meet with Beth Green ("Green"), Director of Human Resources, Eric Kupersmith

("Kupersmith"), Chief Medical Officer, and Dr. Solina.  During said meeting, Dr. Solina

advised Plaintiff Armstead that her employment would be terminated on September 26,

2016, due to alleged "unprofessional conduct."  Curiously, Dr. Solina refused to provide

any information to Plaintiff Armstead regarding her alleged "unprofessional conduct."

29.     Plaintiff Armstead believes and avers that the Defendant's articulated

reason for her termination is pretextual and that Defendant actually terminated her

employment due to her race (African-American) and sex (female).

## COUNT I
### (§1981 - Race Discrimination)
### Plaintiff Armstead v. the Defendant

30.    Plaintiff Armstead incorporates by reference paragraphs 1 through 29 of her Complaint as though fully set forth at length herein.

31.    The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Armstead to discrimination on the basis of her race (African-American), ultimately resulting in the termination of her employment, constitute a violation of §1981.

32.    As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of §1981, as aforesaid, Plaintiff Armstead sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

33.    As a further direct result of the aforesaid discriminatory employment practices engaged in by the Defendant in violation of §1981, Plaintiff Armstead suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (Title VII - Race and Sex Discrimination)
### Plaintiff Armstead v. Defendant

34.    Plaintiff Armstead incorporates by reference paragraphs 1 through 33 of her Complaint as though fully set forth at length herein.

35.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Armstead to discrimination on the basis of her race (African-American) and sex (female), ultimately resulting in the termination of her employment, constitute a violation of Title VII.

36.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, as aforesaid, Plaintiff Armstead sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

37.     As a further direct result of the aforesaid discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Armstead suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT III
### (NJLAD - Race and Sex Discrimination)
### Plaintiff Armstead v. Defendant

38.     Plaintiff Armstead incorporates by reference paragraphs 1 through 38 of her Complaint as though fully set forth at length herein.

39.     The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Armstead to discrimination on the basis of her race (African-American) and sex (female), ultimately resulting in the termination of her employment, constitute a violation of the NJLAD.

40.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the NJLAD, as aforesaid, Plaintiff Armstead sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

41.     As a further direct result of the aforesaid discriminatory employment practices engaged in by the Defendant in violation of the NJLAD, Plaintiff Armstead suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

**PRAYER FOR RELIEF**

42.     Plaintiff Armstead incorporates by reference paragraphs 1 through 38 of her Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Armstead requests that this Court enter judgment in her favor and against the Defendant and Order that:

a.      Defendant compensate Plaintiff Armstead for the wages and other benefits and emoluments of employment lost, because of its unlawful conduct;

b.      Defendant compensate Plaintiff Armstead with an award of front pay, if appropriate;

c.      Defendant pay to Plaintiff Armstead punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d.      Defendant pay to Plaintiff Armstead pre and post judgment interest, costs

of suit and attorney and expert witness fees as allowed by law;

e.      The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Armstead demands trial by jury.

SIDNEY L. GOLD & ASSOCIATES, P.C.

*/s/ Traci M.Greenberg, Esquire*

By:  _____

TRACI M GREENBERG, ESQUIRE
N.J. I.D. No.: 029712000
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
*Attorney for Plaintiff*

Dated:  November 29, 2017

## VERIFICATION

I hereby verify that the statements contained in the attached Complaint are true and correct to the best of my knowledge, information and belief.

DATE: *November 17, 2017*

VALERIE ARMSTEAD, PLAINTIFF